Shohl, J.
Martin G. Bruner employed Albert T. Brown, an attorney of Cincinnati, to secure a reduction by suit or otherwise of the assessment ■levied by the city of Cincinnati against his property on Cass avenue. Under the terms of that *315 agreement Brown was to be paid one-half of the amount saved on the assessment, and was to bear all expenses involved in the litigation. An action was brought and a reduction of the assessment was secured. After a payment of ten dollars on account Bruner refused to make further payments, and Brown brought suit against him on the contract in the municipal court of Cincinnati. The defendant there secured a judgment on the pleadings, from which no error proceedings were taken. Between the parties therefore it is settled that the contract was illegal. Brown then brought another suit in the municipal court for services rendered, asking judgment for the reasonable value of his services, alleging that they were worth $88.97, which was the exact amount to which he was entitled had the contract been valid. Credit was given for the ten-dollar payment. The defendant answered alleging that tne services were performed under a contract adjudged to have been illegal. The municipal court decided in favor of the defendant, and the court of common pleas affirmed that decision.
The dismissal of the original suit does not bar the new action. It was not a decision on the merits, and amounted to no more than a judgment on demurrer to the petition. Moore v. Dunn, 41 Ohio St., 62, and Rafferty v. The Toledo Traction Co., 1 C. C., N. S., 538.
If the contract was champertous there is no doubt that the courts will not enforce it. (Davy et al. v. The Fidelity & Casualty Ins. Co., 78 Ohio St., 256.) It does not follow, however, that the plaintiff is entirely without remedy. The law of *316 .champerty and maintenance had its origin in England, where influential persons, to whom rights of action were transferred in order to obtain their support and favor, harassed society and stirred up strife and litigation. “The power of the nobles became mighty in corrupting the fountains of justice, and subverting the freedom and independence of the judicial tribunals. It was to remedy these evil's that the law of maintenance and champerty was introduced.” (Hovey v. Hobson, 51 Me., 62, 64.) Under modern conditions the reason for the old rule has largely disappeared. The general tendency is toward a relaxation of the ancient doctrines relating to this subject. 11 Corpus Juris, 236.
In many jurisdictions, where the services rendered by an attorney are not illegal, either on account of the nature of the service or the circumstances under which it is rendered, the attorney may recover in quantum meruit notwithstanding the invalidity of the contract under which the services were rendered. City of Rochester v. Campbell, 184 Ind., 421, 425.
Cases have been cited supporting the opposite view. Such decisions as Roller v. Murray, 112 Va., 780, and Barngrover v. Pettigrew, 128 Iowa, 533, arise in states where such a contract for services was criminal. The case of Moreland v. Devenney, 72 Kans., 471, is in point, but we regard it as opposed to the better view. The authorities are collected in 11 Corpus Juris, 269, and in the notes in 2 L. R. A., N. S., 260, and 38 L. R. A., N. S., 1202.
*317 There is nothing in good.morals that requires Bruner to .have the work done , for nothing. He knew just what the services were to be .and. he got results that were valuable to him. We adopt the rule established by the weight of the authoritative decisions, that, although an agreement between an attorney and client is void for champerty, if it is not otherwise illegal, the attorney is nevertheless entitled to reasonable compensation for services rendered. The judgment will be reversed..

Judgment reversed.

Jones, P. J., concurs.